## JOHN PIEROWICZ v. FARMERS MUTUAL FIRE INSURANCE COMPANY.[1]

December 7, 1928.

No. 26,935.

[1]Reported in 222 N. W. 514.

*C. Rosenmeier,* for appellant.
*Frederick J. Miller,* for respondent.

STONE, J.

Action on a policy of fire insurance tried without a jury and to a decision below for plaintiff. Defendant appeals from the judgment.

Defendant is a township mutual fire insurance company. May 26, 1922, it issued to plaintiff a fire policy insuring a barn for $1,400, other buildings for stated sums, and certain personal property within specified limits. The barn and some of the personal property were destroyed by fire June 5, 1926. In the meantime and without the consent or knowledge of defendant, plaintiff had procured $600 additional insurance on the barn in a stock company. The value of the barn was found below to have been in excess of $2,000, the total amount of the insurance carried thereon by plaintiff. But when defendant's policy was issued, $1,400 was the maximum amount for which it would insure the barn. Apparently the building was then considered to be worth $2,100, and defendant under its by-laws cannot insure any barn for more than two-thirds of its value.

Defendant's by-laws provide that "policies of members taking out insurance with other companies, covering property insured with this company, shall immediately become null and void." The same policy is manifested by G. S. 1923, § 3663, providing that township mutual fire insurance companies "may issue joint or partial risks in conjunction with adjoining companies of the same class" and that "no such insurance of a joint or partial risk shall be valid or binding upon the company insuring the same until approved by all such companies holding prior risks on property so insured, and the total amount of such joint insurance on any one piece of property shall in no case exceed the total percentage of its value for which such property is insurable by such company." Without now going into the question of whether that statute includes joint risks

carried by a township mutual fire insurance company with some other insurer not itself a township mutual, we simply observe that the by-law of the company above quoted is well within the policy declared by statute. The by-law being valid, it is considered to dispose of this case, as will later appear.

Defendant was promptly notified of plaintiff's loss, and thereupon the secretary and two other adjusters called on plaintiff for the purpose of adjusting the loss. We assume that they had authority to bind the company. Then for the first time there came to the adjusters, and so to defendant, knowledge of the unauthorized additional insurance. The adjusters took the position immediately that the by-laws of the company had been violated, that plaintiff's policy was thereby forfeited (ceased "to be in force," as they put it) and on that ground they refused to pay the loss on the barn. They did agree to pay plaintiff and did cause to be paid him the loss on the personal property. The transaction was evidenced by a receipt for that payment, which recited the payment and that as to the barn the "case will be referred to Board of Directors for decision." It was so referred to the directors, who refused payment, their records showing that the refusal was because "of insurance with another company contrary to rules" of defendant.

The decision below went for plaintiff because of the finding of fact that although there had been a forfeiture of plaintiff's policy rights because of the unauthorized additional insurance the same had been waived by defendant. That conclusion is based upon the payment of the personal property loss, which was considered an acknowledgment of the validity of the policy; the failure of defendant to deny liability for the loss on the barn and the reference of the matter to its board of directors; the supposed action of the defendant in requiring plaintiff to call on its board of directors in an attempt to get the loss adjusted and settled; and the fact that plaintiff was "caused" to sign the receipt already referred to.

We are unable to agree in the view that there was a waiver. The affirmative finding in that respect arises from what seems to us a faulty method of appraising the facts. The error consists of

separating into several mere fragments what was essentially a unitary transaction and giving to each of some of the fragments an independent effect not intended at the time by any participant in the matter. A given transaction may extend over quite a period and consist of many parts or steps, every one of which is conditioned, explained and given color by all the others. So a correct understanding can be had only by considering the whole or at least, upon analysis, by examining each part in the light of all the others. An incorrect result, one opposed to the intention of the parties, is easily possible if only a few of the parts are examined, and each of them by itself and without the color and light put upon it by the rest of the transaction of which it is only a part.

To start with, the record does not support the finding that the adjusters, in deciding to pay plaintiff the loss on his personal property, intended to waive the forfeiture as to the barn. Their action was commendable, and their company should not be penalized for it. Of course if anything they did within the scope of their authority had indicated plainly an intention to waive the forfeiture, a finding to that effect would necessarily have followed. Or if the facts were equivocal and would justify an inference that their intention was to waive the forfeiture, the issue would have been for the trier of fact and his finding thereon sustained. But the record does not support such an inference. The by-laws of the company had been violated by plaintiff, and his policy was thereby forfeited. The adjusters took that position immediately the thing came up and reserved decision upon that aspect of the matter for the directors, who under the statute have the management of the company. In that plaintiff acquiesced. He was not compelled to do so, except by the force of circumstances. Nothing so far shows an intention on the part of the adjusters to waive the forfeiture. Instead they asserted a forfeiture so far as the barn was concerned, so no inference can be drawn at this point of anything in the nature of a waiver.

The following finding, that "the defendant did not deny liability for loss on said barn," is not at all supported by the evidence. The adjusters did make that denial. As we read the record, no

other inference is possible. Plaintiff was not "required" to call on defendant's board of directors nor to sign the receipt which he did sign in any manner amounting to compulsion nor as anything in the nature of a step or condition forced upon him to his prejudice. He knew that the matter was being referred to the board of directors, and of course it was suggested that he get in touch with one or more of them to support his own claim in whatsoever way he could. He signed the receipt, not under compulsion nor even as a condition to further proceedings in the matter, but simply as a frank and truthful recital of what took place. On this phase the case on its facts differs widely from Page v. Rollingstone Mut. F. F. Ins. Co. 166 Minn. 74, 207 N. W. 24. There the question of waiver came up on demurrer to the complaint of an insured, and the facts pleaded by him to show waiver of a forfeiture and held sufficient for that purpose went far beyond anything in this record.

The transaction, from the time the adjusters first called upon plaintiff to that when the directors met and denied the claim for loss on the barn, was single and continuous. No part of it can properly be set off from the rest and given an effect independent of the whole; and the whole taken together does not show that affirmative intention, nor does it support an inference that there was such an intention on the part of defendant or anyone representing it necessary to a waiver of the forfeiture.

Needless to say, the willingness to pay the personal property damage, conditioned as it was from the start and continuously to the end upon a reservation of the right to claim the forfeiture of the barn, cannot be tortured into a waiver of the whole as distinguished from a part of the forfeiture. The intention was apparent from the beginning to insist upon the forfeiture and enforce defendant's by-laws as to the loss on the overinsured barn.

The waiver of a contract right is a question of intention. Ohio Confection Co. v. Eimon Merc. Co. 154 Minn. 420, 191 N. W. 910, 31 A. L. R. 952. It may be and normally is found from a variety of circumstances. But the conclusion of waiver is not supported unless the inference can reasonably be drawn that the intention to

waive has been formed and expressed. It is simple logic that a waiver may be found from "the doing of some act which is inconsistent with an intention to insist on a strict performance," Coppoletti v. Citizens Ins. Co. 123 Minn. 325, 328, 143 N. W. 787; or, as was said in Mee v. Bankers Life Assn. 69 Minn. 210, 211, 72 N. W. 74:

"If in negotiations * * * after knowledge of a ground of forfeiture * * * an association recognizes the continued validity of the certificate [of insurance], or does acts based thereon, the forfeiture is, as a matter of law, waived."

But in this case everything done by or on behalf of defendant, after it had knowledge of plaintiff's loss, indicates its insistence upon the forfeiture of the insurance on the barn. The adjusters took that position and the directors confirmed it. With defendant's position so conditioned, its payment of the loss on the personal property, expressly qualified as it was, cannot be considered as a waiver of the whole forfeiture, but only as a waiver pro tanto, and affecting only the loss on the personal property, as to which there was no overinsurance or other ground for forfeiture.

That conclusion is in no way weakened by the argument that the policy was a single and indivisible contract and that it was forfeited as an entirety or not at all. That conclusion of course is tenable as a generalization. But it does not follow that a forfeiture cannot be waived in part only; that because defendant was willing to pay the loss on the personal property, insisting at the same time on the forfeiture of plaintiff's right to recover for the barn, it should be held to have done something it never intended to do and be considered to have waived the forfeiture as an entirety. Any such holding would make it impossible for an insurer in such a case as this to make a compromise proposition, do the decent thing and recognize a moral obligation where no legal one exists. Certainly such an offer can be made without prejudice to any rights of the insurer which are expressly reserved from its effect. That is this case, for the payment on the personal property was a qualified one

and conditioned expressly upon the reservation of the barn claim for the further action of the directors which resulted in its denial.

The findings of fact refer to other "acts and conduct" of defendant, not otherwise indicated, which might assist the conclusion of waiver. The only thing of that nature we find in the record worthy of comment is the fact that some time after the fire, and when the policy in suit and another one issued by defendant to plaintiff were about to expire, a notice to that effect was sent plaintiff by defendant. It contained no assertion of any right to assess the policies but simply was notice of the fact of expiration sent out as a matter of routine business. It concluded thus:

"If you desire a renewal, notify one of the Company's Directors and have a new application made out."

Here again we find a circumstance not susceptible of the inference that it expressed or intended to express, the intention on the part of defendant to waive any existing right.

Judgment reversed.

